**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SEQUOIA KING, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>      v.<br><br>DEL MONTE FOODS, INC.<br><br>                              Defendant. | Civil Action No.: 1:26-cv-5053<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sequoia King ("Plaintiff"), by and through her attorney, makes the following allegations against Defendant Del Monte Foods, Inc. ("Defendant" or "Del Monte") pursuant to the investigations of her counsel and upon information and belief, except as to the allegations specifically pertaining to herself or her counsel, which are based upon personal knowledge.

**INTRODUCTION**

1.       This is a class action seeking monetary damages, restitution, and declaratory relief arising from Del Monte's practice of raising the prices it charged consumers in order to pass on the tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, and Del Monte's refusal to refund those overcharges to consumers even as Del Monte sues the federal government to recover for itself the very same tariffs that consumers actually paid.

2.       Del Monte is a major importer of canned and packaged food products that sources a substantial portion of its goods internationally, including from China, Greece, Mexico, Thailand, Peru, and the Philippines. While the IEEPA tariffs were in effect, Del Monte paid those tariffs to U.S. Customs and Border Protection ("CBP") and passed the tariff burden on to consumers like Plaintiff and the Class in the form of higher prices.

3.       On February 20, 2026, the United States Supreme Court held that IEEPA tariffs were illegal. *See Learning Res., Inc. v. Trump*, 146 S. Ct. 628 (2026).

4.     Following this decision, the importer of record became entitled to refunds of the duties they had previously paid. The consumers who ultimately paid those tariffs, like Plaintiff and the proposed Class, have no statutory right of action to pursue or collect a refund of the illegal tariffs they paid.

5.     Del Monte has availed itself of that importer-only mechanism. On May 7, 2026, Del Monte filed suit against the United States and federal officials in the United States Court of International Trade, seeking in part, "the refund of unlawful duties." Complaint ¶ 5, *Del Monte Foods, Inc. v. United States et al.*, Docket No. 26-cv-02938 (Ct. Int'l Trade May 7, 2026).

6.     Yet while Del Monte demands a refund of the tariffs it paid, it has not refunded a penny to the consumers who actually paid those tariffs through inflated prices, nor has it given any indication that it intends to do so. Del Monte thus stands to recover the tariff costs twice. Once from its customers through higher prices, and again from the government through its refund suit, while keeping the windfall for itself.

7.     Therefore, Plaintiff brings this suit on behalf of herself, and all similarly situated against Defendant for violations of N.Y. Gen. Bus. Law § 349, money had and received, and unjust enrichment.

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

9.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, including by marketing, distributing, and selling its products to consumers throughout this District, including to Plaintiff who made purchases at

issue in this district.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff purchased a Del Monte product in this District.

## PARTIES

11.     Plaintiff Sequoia King is an individual consumer who, at all times material hereto, was a citizen of New York.  During the Class Period, Ms. King purchased a Del Monte product from Food Dynasty Supermarket located at 24 W Fordham Rd, Bronx, New York 10468. Plaintiff paid retail prices for the product that was increased by Defendant to account for the tariffs imposed on imported products. Plaintiff King would not have paid those higher prices, absent the unlawful tariffs and Defendant's actions in passing the costs of tariffs onto consumers.

12.     Defendant Del Monte Foods, Inc. is a Delaware corporation with its principal place of business in Pittsburgh, PA. Del Monte is one of the largest producers, distributors, and marketers of branded packaged food products in the United States.

13.     Defendant manufactures, markets, and distributes its products throughout New York and the United States.

## FACTUAL ALLEGATIONS

**A.      The IEEPA Tariffs**

14.     Beginning in February 2025, President Trump issued a series of Executive Orders imposing tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. According to the administration, these tariffs were authorized by IEEPA, 50 U.S.C. §§ 1701–1708.[1]

---

[1] https://www.whitehouse.gov/presidential-actions/2025/04/regulating-imports-with-a-reciprocal-tariff-to-rectify-trade-practices-that-contribute-to-large-and-persistent-annual-united-states-goods-trade-deficits/.

15. Enacted in 1977, IEEPA authorizes the President to exercise certain economic powers after declaring the existence of an "unusual and extraordinary threat … to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a).

16. Under the purported authority of IEEPA, the President issued a series of orders, including Executive Order 14257, the so-called "Liberation Day" Order, that imposed a baseline 10% ad valorem duty on products from nearly all countries, additional country-specific rates ranging as high as 50%, and rates as high as 125% on imports from China.[2] These orders directly affected Del Monte's principal sourcing countries, including China, Mexico, Thailand, Peru, the Philippines, and Greece.

17. On May 28, 2025, the United States Court of International Trade ("CIT") held that the President's tariffs "exceed any authority" granted to him by IEEPA. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025). The Federal Circuit, sitting en banc, affirmed in August 2025. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

18. On February 20, 2026, the United States Supreme Court affirmed, holding that IEEPA did not authorize the President to unilaterally impose tariffs. *Learning Res., Inc. v. Trump*, 146 S. Ct. 628 (2026). The President then issued an Executive Order terminating the IEEPA tariffs, and on February 22, 2026, CBP announced that it would halt the collection of all IEEPA duties effective February 24, 2026.[3]

19. While the IEEPA tariffs were in place, CBP collected more than $166 billion in duties.[4]

---

[2] Executive Order 14257, 90 Fed. Reg. 21831 (May 12, 2025)

[3] https://content.govdelivery.com/accounts/USDHSCBP/bulletins/40b11c9.

[4] https://www.cnbc.com/2026/06/09/us-customs-agency-trade-judge-to-seek-path-to-final-tariff-refunds.html.

**B.    Del Monte Passed the Unlawful Tariffs On to Consumers**

20.    Throughout the Class Period, Del Monte paid IEEPA tariffs to CBP on its imported goods and passed that tariff burden on to consumers in the form of higher prices.

21.    In a May 2026 report, the Dallas Federal Reserve found that the cost of goods with the greatest tariff exposure rose and inflated consumer prices during the tariff period.[5]

22.    According to the Consumer Brands Association, an organization that Del Monte is a member of, it was projected that steel and aluminum tariffs would increase store prices for items in steel cans by 9 to 15 percent.[6]

23.    That prediction has come to fruition. In March of 2026, canned fruits and vegetables cost 5.7 percent more than they did a year earlier, compared with a 2 percent increase for other food products.[7]

24.    Furthermore, there was a 647% increase in taxes on food and agriculture items.[8]

25.    Del Monte's CEO admitted that tariffs impacted almost every aspect of the business from mandarins that the company imports from China to grapefruits grown in Mexico. Ultimately, he said that rising costs would "likely require up to mid-single-digit price inceases[.]"[9]

26.    Del Monte increased the prices of its imported and import-dependent products, including its shelf-stable fruit and vegetable products during the Class Period as a direct result of the IEEPA tariffs. As a direct result of Del Monte's tariff pass-through pricing, Plaintiff and the

---

[5] https://www.dallasfed.org/research/economics/2026/0505-mau

[6] https://www.jec.senate.gov/public/index.cfm/democrats/2025/6/senator-hassan-launches-inquiry-into-the-impact-of-tariffs-on-grocery-costs.

[7] https://www.nytimes.com/2026/05/12/business/steel-tariffs-tin-cans-food-prices.html

[8] https://www.uschamber.com/tariffs/tariff-relief-for-food-agricultural-products-puts-pressure-on-prices

[9] https://financialpost.com/news/retail-marketing/del-monte-bankruptcy-what-means-for-canadians.

putative Class paid more for Del Monte products than they would have absent the unlawful IEEPA tariff-related price increases.

### C.    Del Monte Seeks a Refund for Itself While Withholding it from Consumers

27.    In the wake of the Supreme Court's February 2026 decision, thousands of importers filed cases in the CIT to recover tariff refunds from the government. The CIT has ruled that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 679285 at *1 (Ct. Int'l Trade Mar. 5, 2026). And further ordered CBP to liquidate or reliquidate affected entries "without regard to IEEPA duties." *Id*. at *2.

28.    CBP thereafter released the Consolidated Administration and Processing of Entries ("CAPE") tool within the Automated Commercial Environment Secure Data Portal ("ACE Portal") to process importers' tariff refund requests, and the first wave of tariff refunds (plus interest) began reaching importers in 2026.[10]

29.    Those refunds, however, may be issued only to entitled importers of record.[11] The consumers who actually paid the tariffs have no way to recover money for the higher prices they paid, despite evidence that companies like Defendant were passing through higher costs dierectly on to consumers.

30.    Del Monte has taken full advantage of the importer-only refund mechanism. On May 7, 2026, Del Monte filed *Del Monte Foods, Inc. v. United States et al.*, Docket No. 26-02938 (Ct. Int'l Trade May 7, 2026), against the President, the United States, CBP, and other federal officials, seeking a declaration that the tariffs are unlawful and "an order requiring the United

---

[10] https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds
[11] *Id*.

6

States to refund to [Del Monte] all duties collected pursuant to the Challenged Orders on all relevant entries, whether liquidated or unliquidated, with pre- and post-judgment interest."

31.    In that complaint, Del Monte alleges that it "has paid IEEPA duties to the United States and thus has suffered injury," and that it sustained "concrete economic injury" from the tariffs. Del Monte does not disclose that it has already recovered those same duties from its own customers by raising prices.

32.    Despite seeking a full refund of the tariffs it paid, Del Monte has not refunded the overcharges to Plaintiff and the Class, nor has it indicated any intention to do so.

33.    Therefore, Defendant stands to receive a windfall. It recovered tariff costs from consumers and now will double down by recouping those same costs from the government.

34.    Plaintiff brings this action on behalf of herself, and all similarly situated persons to recover damages and equitable relief arising from Defendant's unlawful retention of the tariff refund.

## CLASS ALLEGATIONS

35.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

### Nationwide Class

All natural persons who purchased a Del Monte product in the United States within the applicable statute of limitations period.

### New York Subclass

All natural persons who purchased a Del Monte in the State of New York within the applicable statute of limitations period.

36.    Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who

make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

37.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

38.    Plaintiff is a member of both classes.

39.    Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. Defendant's products are sold throughout the United States and the State of New York. The number of individuals who purchased products during the relevant time period is at least in the tens of thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

40.    Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

    (a)    whether Defendant passed on IEEPA tariff-related charges to Plaintiff and the Classes through increased prices;

    (b)    the amount by which Plaintiff and the Classes were overcharged for Del Monte products because of the illegal tariffs;

    (c)    Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

(d)   Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

(e)   Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

(f)   Whether Plaintiff and the Classes are entitled to statutory damages, and if so, in what amount; and

(g)   Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

41.   Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant passing through tariffs onto consumers through higher prices then seeking a refund for those tariffs without refunding consumers. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct.

42.   Superiority: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

43.     Typicality: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes, including Plaintiff, are similarly affected by Defendant's uniform conduct as alleged herein.

44.     Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

45.     Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of the New York General Business Law § 349**
**(On behalf of the New York Subclass)**

46.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

47.     Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

48.     Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

49.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

50.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

10

51.    Defendant engaged in deceptive and materially misleading acts and practices in the conduct of trade or commerce by charging Plaintiff and New York Subclass members inflated prices that incorporated the IEEPA duties Defendant purportedly owed to the government, and by continuing to charge and retain those overcharges after the tariffs were invalidated, all while seeking a refund of those same duties for itself.

52.    In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

53.    Defendant's acts and practices were likely to, and did, deceive reasonable consumers, including Plaintiff, about the true and lawful price and value of Defendant's products, by causing them to pay prices inflated by tariff charges that were unlawful and that Defendant has not refunded. Defendant did not disclose to Plaintiff and similarly situated consumers that it could recover the tariff costs it was passing through, or that consumers would receive no portion of any such refund.

54.    Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

55.    Defendant's actions set forth above occurred in the conduct of trade or commerce.

56.    The foregoing deceptive acts and practices were directed at consumers.

57.    Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest.  Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

58.    Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that in that they paid more for Del Monte products than they otherwise would have had Defendant not passed through and retained the illegal tariff costs.

11

59.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover their actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II
### Unjust Enrichment
### (On behalf of the Classes)

60.     Plaintiff realleges and incorporates by reference all preceding allegations of this Complaint as if fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the members of the Class and the New York Subclass against Defendant.

62.     Plaintiff and Class members conferred a monetary benefit on Defendant when they purchased Del Monte products at increased prices due to the unlawful IEEPA tariffs that Defendant passed through to its customers.

63.     Defendant appreciated and accepted the monetary benefits that Plaintiff and Class members conferred when they purchased Del Monte products at higher prices due to the IEEPA tariffs, and Defendant profited from passing those tariffs on to its customers.

64.     Despite the IEEPA tariffs having been declared unlawful, and despite suing the United States to recover those very tariffs for itself, Defendant has not refunded to Plaintiff and Class members the overcharges they paid while the tariffs were in place, nor has Defendant made any indication that it intends to do so.

65.     It would be unjust and inequitable for Defendant to retain the overcharges paid by Plaintiff and Class members, because those overcharges comprise illegal tariff costs that Defendant passed along to its customers and that Defendant is simultaneously seeking to recover from the

12

government. Plaintiff and Class members would reasonably have expected Defendant to refund those overcharges once the tariffs were invalidated.

66.     Plaintiff and Class members suffered injury as a direct and proximate result of Defendant's decision to keep the unlawful tariff overcharges it passed along to its customers. Defendant should not be permitted to retain the benefits, in the form of higher prices, that Plaintiff and Class members paid as a result of the illegal tariffs. Plaintiff and the Classes therefore seek restitution and disgorgement of the benefits conferred upon Defendant in the form of their IEEPA tariff payments, the exact amount of which will be proven at trial.

## COUNT III

### Money Had and Received
### (On behalf of the Classes)

67.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

68.     Defendant received monies from Plaintiff and Class members in the form of tariff pass-through surcharges.

69.     Defendant received this money in order to recoup the IEEPA tariffs that Defendant, as the importer of record, had paid to U.S. Customs and Border Protection as duties on imported goods.

70.      The Supreme Court has since determined that those tariffs were unlawful.

71.     Defendant is now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the CAPE refund process and the protective action Defendant filed in the CIT.

72.     The money that Defendant will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed classes, the consumers who paid elevated prices due to Defendant's tariff pass-through.

13

73.     Defendant has not returned this money to Plaintiff or the Class.

74.     In equity and good conscience, Defendant should not be permitted to retain the funds it recovers or has recovered from the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class, and Defendant is obligated to return them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and members of the Class and New York Subclass as follows:

a.      For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.      For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.      For injunctive relief enjoining the illegal acts detailed herein;

f.      For prejudgment interest on all amounts awarded;

g.      For an order of restitution and all other forms of equitable monetary relief;

h.      For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 15, 2026                  **BURSOR & FISHER, P.A.**

By:_____/s/ Julian C. Diamond_____
                    Julian C. Diamond

Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
Email: jdiamond@bursor.com